UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| IN RE: ) | |
| ) | Chapter 7 |
| JESSICA DAWN SCOTT, ) | |
| ) | Case Number 16-50158 |
|     Debtor. ) | |
| ) | |
| JUDY A. ROBBINS, ) | |
| United States Trustee For Region Four, ) | |
| ) | |
|     Plaintiff, ) | |
| ) | |
| *v.* ) | Adversary Proceeding |
| ) | Case Number 16- |
| ) | |
| JOHN C. MORGAN, JR., ) | |
| JOHN C. MORGAN, JR., PLLC, ) | |
| UPRIGHT LAW LLC, ) | |
| LAW SOLUTIONS CHICAGO LLC, ) | |
| JASON ROYCE ALLEN, ) | |
| KEVIN W. CHERN, ) | |
| EDMUND SCANLAN, and ) | |
| SPERRO LLC, ) | |
| ) | |
|     Defendants. ) | |

**COMPLAINT**

Now comes Judy A. Robbins, United States Trustee for Region Four, by counsel, and files this complaint to: (i) require the defendants to disgorge funds received; (ii) cancel the debtor's retainer agreement with Upright Law LLC, Law Solutions Chicago, LLC, John C. Morgan, Jr., PLLC, and/or John C. Morgan, Jr.; (iii) enjoin the debt relief agency defendants from committing future violations of 11 U.S.C. § 526; (iv) impose appropriate civil penalties against the debt relief agency defendants; (v) prohibit John C. Morgan, Jr., Upright Law LLC, Law Solutions Chicago, LLC, Jason Royce Allen, Kevin W. Chern, and Edmund Scanlan from

practicing before this court whether directly or indirectly; (vi) order Sperro LLC and its affiliates to disgorge funds received, and prohibit Sperro LLC and its affiliates from remitting any funds to Upright Law LLC, Law Solutions Chicago, LLC, or any of their affiliates, members, or agents; and (vii) take such other action as the court deems necessary to deter such misconduct and similar schemes in the future.

### I. Jurisdiction and Venue

1. This adversary proceeding relates to the chapter 7 case of Jessica Dawn Scott, case number 16-50158 (the "Scott Bankruptcy Case"), pending in the United States Bankruptcy Court for the Western District of Virginia, Harrisonburg Division.

2. The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334.

3. This complaint is based on 11 U.S.C. §§ 105, 307, 329, and 526; Fed. R. Bankr. P. 2016 and 2017; Local Rules 2090-1 and 5005-4; and the court's inherent power.

4. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

5. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

### II. Background

*A. The Parties*

6. Plaintiff United States Trustee is a Department of Justice official with standing to file this complaint under 11 U.S.C. § 307.

7. Defendant Kevin W. Chern is an attorney licensed by the State of Illinois to practice law. Chern is not licensed to practice law in Virginia.

8. Defendant Jason Royce Allen is an attorney licensed by the State of Illinois to practice law. Allen is not licensed to practice law in Virginia.

9. Defendant Law Solutions Chicago LLC ("LSC") is an Illinois company. It filed articles of organization with the Illinois Secretary of State on October 10, 2008. It is authorized to transact business in Illinois under the following active assumed names: Jason Allen Law LLC; Upright Law LLC; and Allen & Associates, LLC. It has the following inactive assumed names in Illinois: Immediate Payroll Information Services LLC; and Law Solutions. It also holds itself out as a service of "Allen Chern Law."

10. LSC solicits clients over the Internet. On its website, it purports to have "Local Offices Nationwide."

11. On information and belief, LSC does not have offices nationwide.

12. LSC was domesticated in Virginia on April 14, 2014. It listed its principal office as 25 E. Washington Street, Suite 400, Chicago, Illinois.

13. Chern, Allen, and Lynn Coleman are listed in documents filed with the Illinois Secretary of State as the managers of LSC.

14. On information and belief, Chern and Allen are members in LSC and its affiliates.

15. According to LSC's website, Defendant Edmund Scanlan is the chief executive officer of "Upright Law," and manager of an entity named Upright Litigation, LLC. According to LSC's website, "all legal services are provided by affiliated and related entities." The website states that Scanlan is the "CEO" or "Administrator" of every entity allegedly providing the legal services to prospective debtors.

16. Upon information and belief, Scanlan is not licensed to practice law in any jurisdiction.

17. Defendant Upright Law LLC is a Virginia company. Allen signed the articles of organization for Upright Law LLC that were filed with the Virginia State Corporation

Commission on or about January 9, 2015. According to the articles, the company's principal office is located at 98 Alexandria Pike, Suite 10, Warrenton, Virginia 20186. A copy of the articles of organization is attached as Exhibit 1.

18. John C. Morgan, Jr. is a member of the bar of the United States Bankruptcy Court for the Western District of Virginia. John C. Morgan practices before this court as a member of John C. Morgan, Jr., PLLC (collectively with John C. Morgan, Jr., "Morgan") and also purports to be a partner in Upright Law LLC by virtue of a limited partnership agreement. Morgan's law office is located at 98 Alexandria Pike, Suite 10, Warrenton, Virginia 20186.

19. Defendant Sperro LLC (collectively with its affiliates, "Sperro") is an entity owned by Brian Fenner that does business as Sperro Towing and Recovery. Affiliates of Sperro include Fenner & Associates LLC, which is commonly owned with Sperro, and uses the same address, 2534 Bluff Road, Indianapolis, Indiana, and the same registered agent, Joseph F. Thoms.

20. Scott is an assisted person as defined by 11 U.S.C. § 101(3).

21. LSC, Upright Law LLC, and Morgan are debt relief agencies as defined in 11 U.S.C. § 101(12A), and all of them provided bankruptcy assistance to Scott.

*B.  The Appearance and Formation of Upright Law LLC in the Western District of Virginia*

22. On information and belief, beginning in 2014, Allen, Chern, and/or LSC began recruiting attorneys licensed to practice in the Western District of Virginia to represent prospective debtors, including assisted persons, who had paid money to LSC for representation in bankruptcy cases to be filed in the United States Bankruptcy Court for the Western District of Virginia. Upon information and belief, attorneys that agreed to participate were given "limited partnership agreements" to sign.

23. On or prior to October 29, 2014, Morgan obtained a second ECF password to use in connection with cases filed as a purported partner or representative of Upright Law LLC. On information and belief, Morgan signed a Case Management/Electronic Case Filing (CM/ECF) System Participant Registration Form to obtain the password. On information and belief, Morgan represented his firm name to be Upright Law LLC on the CM/ECF participant registration form. However, no law firm named Upright Law LLC had been registered with the Virginia State Corporation Commission and the Virginia State Bar, and as a result no such law firm was authorized to practice law in Virginia at that time.

24. Prior to the filing of both articles of organization for Upright Law LLC with the Virginia State Corporation Commission and an application for a certificate of registration with the Virginia State Bar, Morgan used his Upright ECF password to file the following cases: In re Long 14-5144; and In re Duncan 14-71520.

25. On or about August 12, 2015, Allen caused an application for a certificate of registration for Upright Law LLC (attached as Exhibit 2) to be filed with the Virginia State Bar. The application listed "John Morgan," "Edrie Pfeiffer," and "Darren Deerfield" (sic) as the members of Upright Law LLC who would practice law in Virginia.

26. The application for a certificate of registration listed Upright Law LLC's address as 79 W. Monroe Street, Fifth Floor, Chicago, Illinois 60603.

27. Although all documents filed with the Virginia State Bar must be signed by at least one member of the bar of Virginia, no person authorized to practice law in Virginia signed the application for a certificate of registration filed with the Virginia State Bar. Allen (an Illinois lawyer) signed the certificate of registration filed with the Virginia State Bar.

28. As the certificate of registration indicates, LSC and Upright Law LLC's dealings with Morgan are part of a broader pattern and practice of conduct. For example, at least one other attorney has filed cases in this district purportedly as a representative of "Upright Law LLC" prior to that entity being authorized to practice law in Virginia. Darren T. Delafield, a member of the bar of this court, obtained a second ECF password on or prior to January 10, 2015, to use in connection with cases filed as a purported partner or representative of Upright Law LLC. On information and belief, Delafield signed a Case Management/Electronic Case Filing (CM/ECF) System Participant Registration Form to obtain the password. On information and belief, Delafield represented his firm name to be Upright Law LLC on the CM/ECF participant registration form. However, no entity named Upright Law LLC was authorized to practice law in Virginia at that time. After the filing of articles of organization for Upright Law LLC with the Virginia State Corporation Commission but prior to Upright Law LLC obtaining a certificate of registration from the Virginia State Bar, Delafield used his Upright ECF password to file the following cases and adversary proceedings: In re McClenton 15-60037; In re Rubino 15-70130; In re Winners 15-70247; McClenton v. Asset Acceptance, LLC 15-06024; McClenton v. Springleaf Financial Services 15-06024; In re Epperson 15-70470; In re McDaniel 15-70572; In re Harvey 15-50564; In re Richerson 15-61444; In re Bass 15-61445; and In re Royall 15-71084.

C. *The "New Car Custody Program"*

29. By May 2015, LSC began advising the lawyers it worked with (its "Valued Partners") to participate in the "New Car Custody Program."

30. In an email dated June 18, 2015 (attached as Exhibit 3), Chern explained that the program works as follows:

Qualifications:

-Client wants to file for Chapter 7 bankruptcy.
-Client has a vehicle, motorcycle, boat, truck or other property that client is willing to surrender.
-The property intended to be surrendered has no equity.
-The property to be surrendered is worth greater than $5000.

Program Details:
-Client contacts Sperro LLC (Sperro), a towing and storage company, and arranges for Sperro to take custody of the debtor's property.
-At time of surrender of vehicle to Sperro, Client signs a towing, storage and custody agreement with Sperro. . .Sperro charges customary and reasonable fees for these services. . .
-UpRight notifies the finance company. . .that Sperro has custody of the vehicle. . .and they should recover the vehicle as soon as possible to avoid excessive storage fees.

Benefits to Client:
. . .
-Immediately upon placing the vehicle in Sperro's custody, Sperro will remit the entire legal fee plus filing fee to UpRight Law on client's behalf. . .

31.    On information and belief, Morgan received the email.

32.    On information and belief, LSC and Sperro created The New Car Custody Program as part of a scheme to generate revenue for themselves at the expense of prospective debtors and secured lenders. As part of this scheme, LSC advised prospective debtors with "qualifying" vehicles to enter the New Car Custody Program emphasizing that their bankruptcy legal fees would be paid. To have a "qualifying" vehicle, the prospective debtors had to have no equity in the vehicle. Prospective debtors who participated in the New Car Custody Program were directed to surrender their vehicle to Sperro and to incur new debt by signing its towing and storage agreement. On information and belief, prospective debtors were advised by LSC that they would not have to pay the towing and storage fees incurred and, if the prospective debtor inquired, that the transaction with Sperro was legal.

33. An example of a contract Sperro provides to prospective debtors – including, on information and belief, Scott – is attached as Exhibit 4.

34. After a prospective debtor has signed a towing and storage contract with Sperro, Sperro takes possession of the prospective debtor's vehicle and transports it to a storage facility owned by Sperro, located in Indiana.

35. Sperro charges inflated fees for towing and storage that are designed to permit it to assert a lien large enough to cover these fees plus an additional amount to benefit Sperro.

36. After the debtor fails to pay the charges, Sperro asserts a lien against the vehicle and purports to exercise its lien rights to conduct an auction of the vehicle to obtain title to the vehicle.

37. Sperro pays LSC the fees and costs the prospective debtor agreed to pay for a bankruptcy case and, on information and belief, retains the rest of the proceeds.

38. This situation has played out in multiple bankruptcy cases in multiple states in addition to having occurred in this case and in the Williams (15-71767), White (16-70361), and McGuire (16-70732) cases filed in this court. A similar complaint is pending in the Williams case, Adv. Pro. 16-07024.

39. Upon information and belief, some prospective debtors are told by LSC and/or Sperro that Sperro will take possession of the vehicles and obtain the consent of the secured creditors to sell the vehicles for the benefit of the secured creditors.

D. *General Summary of the Business Model*

40. When a prospective debtor reviews the website operated by LSC, the prospective debtor is asked to provide his or her contact information to learn if they qualify for bankruptcy relief. Thereafter, agents of LSC – located, upon information and belief, in Chicago – call the

prospective debtor, ask questions about his or her financial situation, and give the prospective debtor advice including, but not limited to, whether to file a bankruptcy petition and under which chapter to file it.

41. If the prospective debtor agrees to hire "Upright," LSC asks the prospective debtor to provide information for accounts that can be debited for bankruptcy-related fees and costs quoted to the prospective debtor. If the prospective debtor cannot pay the fee immediately, automatic withdrawals are set up to debit the prospective debtor's account over time.

42. On information and belief, only after LSC collects the full amount quoted does LSC refer the prospective debtor to a "limited partner" licensed to practice law in the prospective debtor's state.

43. On information and belief, LSC pays the "limited partner" a percentage of the fee received by LSC from the prospective debtor after the petition is filed and pays an additional percentage of the fee received after the discharge order is entered. However, the Statements of Financial Affairs on cases filed in this court generally state that the debtor paid "UpRight Law LLC." Further, the attorney filing the petition generally files a Rule 2016 disclosure stating that the "Debtor" was "[t]he source of compensation paid to me."

44. On information and belief, Defendants have no way to run proper conflicts checks. In addition, LSC usually controls all contact with prospective debtors until, in chapter 7 cases, all fees are collected by LSC.

45. At least 8 cases, most under chapter 7 and at least 1 under chapter 13, have been filed in this court under the Upright ECF password issued to Morgan. More than 30 cases filed under chapter 7 and chapter 13 have been filed under the Upright ECF passwords issued to Delafield.

E. *Transactions Involving Scott*

46. By October 2015, the debtor was financially distressed.

47. As a result of her financial condition, Scott began searching the Internet for information about bankruptcy. She reviewed LSC's website and contacted "Upright."

48. Scott agreed to retain "Upright" in or about October 2015 and she gave LSC's agents permission to debit her account $100.00 immediately and then $100.00 bi-weekly thereafter until approximately $1,835.00 was received. LSC debited Scott's account and received $100.00 from Scott.

49. Scott asked LSC for advice about a 2005 Pontiac Sunfire (the "Vehicle") that she could not afford and did not want to try to keep.

50. The LSC agent advised Scott that under the "New Car Custody Program," Sperro would take the car, sell it, and use some of the proceeds to pay the fees and expenses quoted for representation of Scott in a chapter 7 case.

51. The Vehicle was collateral for a debt owed to Credit Acceptance Corp. ("Credit Acceptance").

52. Sometime in November 2015, the debtor received a towing and storage agreement from Sperro.

53. On information and belief, pursuant to the Sperro Agreement, Scott, upon the advice of LSC, incurred the following charges: $75.00 to load the car; $1.85 per mile to tow the car from Scott's residence in Strasburg, Virginia to Indianapolis, Indiana; $75.00 to unload the car; and $45.00 per day in storage charges. Pursuant to the Sperro Agreement, Scott agreed to indemnify, hold harmless, and defend Sperro from all claims, demands, actions or causes of actions, including attorney's fees and all costs.

54. Sperro's services were completely unnecessary. Apart from the fact that LSC advised her to do so, Scott had no reason to enter into the Sperro Agreement.

55. On information and belief, pursuant to the Sperro Agreement, Sperro acquired a security interest in Scott's Vehicle.

56. On information and belief, LSC's agents advised Scott to participate in the "New Car Custody Program" to, among other things, fund payment of Scott's legal fees for this bankruptcy case.

57. On information and belief, Scott was given an odometer disclosure to sign. After an opportunity for discovery it is believed the evidence will show that the odometer disclosure names Scott as "sellers" of the Vehicle and either Sperro or Sperro's owner, Brian Fenner, as the "buyer" of the Vehicle. Upon information and belief, the odometer disclosure was provided to Scott to obtain the necessary paperwork to permit Sperro to convert Scott's Vehicle and deprive Credit Acceptance of its security interest in the Vehicle.

58. On or about November 2015, an agent of Sperro took possession of the Vehicle.

59. On information and belief, by entering into the Sperro Agreement upon the advice of LSC, Scott became contractually obligated to Sperro to pay towing and storage fees and other charges, and granted Sperro a statutory lien on the Vehicle in the event of non-payment. Under the Sperro Agreement, Sperro likely became a creditor of Scott. Scott's Schedules do not list Sperro as a creditor.

60. Based upon LSC's legal advice, Scott transferred the Vehicle to Sperro in connection with and in contemplation of filing her bankruptcy case, to pay for the legal fees for LSC's (and Morgan's) bankruptcy representation and to pay for her bankruptcy case filing fee.

61. Although a transcript of official certified vehicle record as of May 24, 2016, issued by the Virginia Department of Motor Vehicles (Exhibit 5) shows that the Vehicle is still titled to Scott and it still lists Credit Acceptance Corp as the lienholder, after an opportunity for discovery, it is believed the evidence will show that Sperro sold the Vehicle at auction in December 2015, based upon its purported lien. On information and belief, Sperro was aware or should have been aware of the existing security interest on the Vehicle and would have been required to take steps to notify the creditor that it was in possession of the vehicle. The funds generated by Sperro's conversion of the Vehicle went to pay LSC's and Morgan's fees for Scott's bankruptcy case as well as to benefit Sperro. Upon information and belief, notwithstanding its security interest, Credit Acceptance received no funds from the sale of the Vehicle.

62. After an opportunity for discovery, it is believed the evidence will show that Sperro paid LSC at least $1,600.00 in or around December 2015.

63. Consistent with its business practices, upon information and belief, LSC did not refer Morgan to Scott until the full fee quoted to Scott had been received.

F.  *The Original Documents Filed With The Court*

64. Scott testified she met with Morgan and his assistant to complete the schedules and statements filed in support of the petition. According to Scott, she reviewed the documents with Morgan and his assistant and signed the declarations concerning, among other things, the accuracy of her schedules and statements.

65. Schedule F lists "Credit Acceptance" as an unsecured creditor holding a claim in the amount of $6,520.00 as a result of a "Deficiency Balance." [Scott Case Docket No. 1]

66. According to Statement of Financial Affairs #10 [Scott Case Docket No. 1], Credit Acceptance repossessed the Vehicle in November 2015 and the Vehicle had a value of $2,000.00.

67. According to Statement of Financial Affairs #15 [Scott Case Docket No. 1], Scott paid "UpRight Law LLC" $1,500.00 in 2015.

68. According to Statement of Financial Affairs #18 [Scott Case Docket No. 1], the debtor did not transfer any property in the 2 years before her petition date.

69. Morgan signed a Rule 2016 disclosure [Scott Case Docket No. 1] stating that the debtor was the source of the compensation paid.

G. *The Meeting Of Creditors*

70. Morgan used his Upright Law ECF password and electronically filed with the court the petition, schedules, and statements he prepared for Scott and which she signed after reviewing them with him. After the filing of the petition, the United States Trustee appointed Robert Stevens as Scott's chapter 7 trustee.

71. The chapter 7 trustee conducted the meeting of creditors on March 23, 2016. Scott appeared and testified under oath at the meeting of creditors. Morgan's associate attorney, James McMinn, appeared with Scott.

72. During the meeting, Scott testified that the Vehicle was not repossessed, rather "Upright Law took that and or sent out the company, Sperry or something, and they got it…" In addition, Scott testified that she did not pay Upright except for a $100 initial draw; all the funds came from the sale of the vehicle. Scott further testified that she gave the vehicle to Upright to sell for payment of the attorney's fees.

G. *Amended Documents*

73. Scott's testimony at the meeting of creditors contradicted several assertions in her schedules and statement of financial affairs, namely a) that she had not transferred any property during the 2 years prior to filing, b) that Credit Acceptance repossessed the vehicle, and c) that she paid Upright Law and Morgan the attorney's fees. In truth, Scott transferred the Vehicle to Sperro, Sperro sold the Vehicle, and Sperro paid the attorney's fees.

74. In spite of the serious misstatements in documents filed with the court, more than two months passed after the meeting of creditors before Morgan made any effort to correct Scott's schedules, statements, and other papers filed in connection with the case.

75. On June 7, 2016, Morgan filed an amended Rule 2016 disclosure [Scott Case Docket No. 15]. The disclosure states that "Sperro, LLC" paid $1,650.00. The Rule 2016 disclosure does not disclose the $100 that LSC debited from her account.

76. Also on June 7, 2016, Morgan filed an amended Statement of Financial Affairs purporting to bear Scott's electronic endorsement [Scott Case Docket No. 14]. The amended Statement of Financial Affairs #16 indicates that "Sperro, LLC" paid "UpRight Law LLC" an attorney fee of $1,650.00 and the filing fee of $335.00. The amended Statement of Financial Affairs does not disclose any of the funds Scott testified LSC drafted from her account. Rather than disclose the actual dates of all payments, the amended Statement of Financial Affairs says "Sperro, LLC" made a payment in "November, 2015."

77. The amended Statement of Financial Affairs #18 still falsely states that Scott did not transfer any property in the 2 years before her petition date.

78. The amended Statement of Financial Affairs #10 still falsely states that Credit Acceptance repossessed the Vehicle in November 2015.

79. Under the New Car Custody Program as described by Chern, a "qualifying" vehicle was one with no equity. Thus, LSC, Upright, and Morgan must have known or should have known that the Vehicle, like any "qualifying" vehicle, was subject to an existing security interest. Nevertheless, LSC advised Scott to participate in the Sperro scheme, and LSC, Upright, and Morgan accepted proceeds of the "sale" of the Vehicle which they knew or should have known were wrongfully obtained.

80. Based upon the foregoing, Defendants have acted in bad faith.

### COUNT I – DISGORGEMENT UNDER 11 U.S.C. §§ 329(a) and 105 (a)
### (MORGAN, UPRIGHT, LSC)

81. The allegations set forth above are incorporated by reference.

82. All attorneys representing a debtor either in or in connection with a bankruptcy case are required to disclose the compensation "paid or agreed to be paid, if such payment or agreement was made after one year before the date of the filing of the petition, for services rendered or to be rendered in contemplation of or in connection with the case by such attorney, and the source of such compensation." 11 U.S.C. § 329(a). See also Fed. R. Bankr. P. 2016. The precise nature of the fee arrangement must be disclosed, not merely the identity of the ultimate owner of the funds.

83. LSC, Upright Law LLC, and Morgan all had an obligation to ensure the filing of an accurate statement under section 329(a) and Rule 2016(b). Despite this, they failed to disclose completely and accurately the compensation paid in this case, in particular both the ultimate source of the compensation and the sharing of compensation between the various entities involved.

84. 11 U.S.C. § 105(a) authorizes the Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."

85. The incomplete and inaccurate disclosures in this case related to compensation merit ordering LSC, Upright Law LLC, and Morgan to disgorge all fees received in this case.

### COUNT II – DISGORGEMENT UNDER 11 U.S.C. § 329(b)
### (MORGAN, UPRIGHT, LSC)

86. The allegations set forth above are incorporated by reference.

87. If compensation is excessive, a court may cancel a debtor's agreement with counsel for compensation or order the return of such payment to the estate or entity that made the payment. 11 U.S.C. § 329(b); Fed. R. Bankr. P. 2017.

88. Illegal and unethical conduct can serve as a factor considered in analyzing the reasonableness of legal fees paid by a debtor.

89. The attorney defendants' conduct associated with Scott's case was illegal and/or unethical. Defendants advised Scott to enter into an agreement to transfer encumbered property, failed to accurately and completely disclose the transfer, failed to accurately and completely disclose the source of compensations, and when faced with the omissions, failed to properly correct the schedules and statement of financial affairs.

90. Any fee in this case is unreasonable in light of the misconduct of LSC, Upright Law LLC, and Morgan and should be returned under 11 U.S.C. § 329(b).

### COUNT III – INJUNCTION 11 U.S.C. § 526(c)(5)(A)
### (MORGAN, UPRIGHT, LSC)

91. The allegations set forth above are incorporated by reference.

92. The Bankruptcy Code provides that:

> Notwithstanding any other provision of Federal law and in addition to any other remedy provided under Federal or State law, if the court, on its own motion or on the motion of the United States trustee or the debtor, finds that a person intentionally violated this section, or engaged in a clear and consistent pattern or practice of violating this section, the court may—

    (A) enjoin the violation of such section; or

    (B) impose an appropriate civil penalty against such person.

11 U.S.C. § 526(c)(5).

93. LSC, Upright Law LLC, and Morgan have intentionally and/or systematically violated 11 U.S.C. § 526(a)(2) by, among other things, advising debtors to sign declarations regarding Statements of Financial Affairs that reported payment to Upright Law LLC instead of payments to LSC, and with relation to the Sperro cases, that inaccurately disclosed the source of payment and the transfer of vehicles.

94. LSC intentionally and/or systematically violated 11 U.S.C. § 526 by advising prospective debtors, including Scott, to participate in the Sperro scheme.

95. LSC intentionally and systematically violated 11 U.S.C. § 526(a)(3)(A) by, among other things, misrepresenting to prospective debtors, including Scott, that it is a firm with nationwide offices and is able to represent them in cases filed in, for example Virginia, and misrepresenting the nature of the Sperro Agreement.

96. Pursuant to 11 U.S.C. § 526(c)(5)(A), LSC, Upright Law LLC, and Morgan should be enjoined from violating 11 U.S.C. § 526.

### COUNT IV – CIVIL PENALTIES UNDER 11 U.S.C. § 526(c)(5)(B)
### (MORGAN, UPRIGHT LAW, LSC)

97. The allegations set forth above are incorporated by reference.

98. Based on the foregoing, cause exists to impose civil penalties under 11 U.S.C. § 526(c)(5)(B) against LSC, Upright Law LLC, and Morgan in an amount not less than $5,000.00 each.

### COUNT V – 11 U.S.C. § 105 AND INHERENT POWER
### (ALL DEFENDANTS)

99. The allegations set forth above are incorporated by reference.

100. Cause exists for the court to use its inherent power and the authority granted to it under 11 U.S.C. § 105(a) to prohibit Morgan, LSC, Upright Law LLC, Allen, Scanlan and Chern from practicing before this court whether directly or indirectly through any companies in which they have any ownership interests or management authority. Cause also exists to sanction them monetarily.

101. Cause exists for the court to use its inherent power and the authority granted to it under 11 U.S.C. § 105(a) to require Sperro and its affiliates to disgorge all funds received as a result of the Sperro Agreement, and to enjoin Sperro and its affiliates from remitting or providing any funds to LSC or Upright Law LLC or to any affiliate, member, or agent of either of those entities, or any other entities, with relation to cases pending before this court, or in anticipation of filing a case before this court.

WHEREFORE, the United States Trustee, by counsel, requests that the court: (i) require the defendants to disgorge funds received; (ii) cancel the debtors' retainer agreement with Upright Law LLC and/or LSC, and Morgan; (iii) enjoin the debt relief agency defendants from committing future violations of 11 U.S.C. § 526; (iv) impose appropriate civil penalties against the debt relief agency defendants; (v) indefinitely prohibit John C. Morgan, Jr., Upright Law LLC, LSC, Allen, Scanlan, and Chern, from practicing before this court whether directly or indirectly; (vi) order Sperro and its affiliates to disgorge funds received, and prohibit Sperro and its affiliates from remitting any funds to Upright Law LLC, LSC, or any of their affiliates, members, or agents with relation to cases pending before this Court, or in anticipation of filing a case before this Court; and (vii) take such other action as the court deems necessary to deter such misconduct and similar schemes in the future.

Date: June 30, 2016　　　　　　　　　　Respectfully submitted,
　　　　　　　　　　　　　　　　　　　　United States Trustee
　　　　　　　　　　　　　　　　　　　　By: /s/ Margaret K. Garber

Margaret K. Garber (VSB No. 34412)
Assistant United States Trustee
Office of the United States Trustee
United States Department of Justice
210 First Street, S.W., Suite 505
Roanoke, Virginia 24011
540-857-2829
margaret.k.garber@usdoj.gov

CERTIFICATE OF SERVICE

　　　　I certify that on June 30, 2016, I electronically filed the foregoing with the United States Bankruptcy Court for the Western District of Virginia.

　　　　　　　　　　　　　　　　　　/s/ Margaret K. Garber